## <u>SETTLEMENT AGREEMENT AND GENERAL RELEASE</u>

CASVILLE INVESTMENTS, LTD.  ("**Casville**"), MBC INVESTMENTS, SA ("**MBC**") and WATKINS INTERNATIONAL, LTD.  ("**Watkins**"), individually and Derivatively on behalf of Nominal Defendant ARGO DIGITAL SOLUTIONS, INC. ("**Argo**")  (collectively, "**Plaintiffs**"), and the named Defendants, JASON M. KATES, ("**Kates**"),  RICHARD J. SULLIVAN, WORLD CAPITAL MARKETS, INC. and SOLUTIONS, INC. (("**Sullivan Defendants**"), DAVID A. LOPPERT ("**Loppert**") and RVUE HOLDINGS, INC. ("**Holdings**") (collectively, "**Defendants**")  have reached an agreement to settle the Action (as defined below) and have entered into this Settlement Agreement and General Release ("**Agreement**") in the below-styled matter subject to Court Approval (as defined below). Plaintiffs and Defendants shall hereinafter be referenced to as the "**Parties**". Marco Arese is a party to this Agreement solely and limited to the provisions hereof that expressly identify him by name and solely and limited for the express purpose provided in any such provision.

**WHEREAS,** the Plaintiffs filed an action styled *Casville Investments, Ltd., MBC Investment, SA and Watkins International, Ltd., individually and Derivatively on behalf of Nominal Defendant Argo Digital Solutions, Inc. v. Jason M. Kates, Richard J. Sullivan, David A. Loppert, World Capital Markets, Inc., Solutions, Inc., rVue Holdings, Inc. and John Does 1-20, and  Argo Digital Solutions, Inc., Nominal Defendant,* Case No. 12-CV-06968, Abrams/Peck, United States District Court, Southern District of New York on September 12, 2012, asserting derivative claims on behalf of Argo and individual claims against the Defendants (hereinafter "**Action**");

**WHEREAS,** the Action was transferred to the United States District Court, Southern District of Florida, Case No. 13-CV-61596-Dimitrouleas/Snow (the "**Court**");

**WHEREAS,** the John Doe defendants were never served;

**WHEREAS,**  the Parties have agreed to a settlement to the Action (the "**Settlement**"), the terms and conditions of which are embodied and set forth in this Agreement including, but not limited to (i) the payment of the Tangible Settlement Consideration (as defined below) by the Defendants, and (ii) the exchange of releases between the Plaintiffs on the one hand and the Defendants on the other;

**WHEREAS,** the Parties agree that following, among other items, execution of this Agreement by the Parties, all as provided herein, to jointly seek Court Approval (as defined in Section 2 below) of the Settlement by seeking to have the Court approve this Agreement.

**NOW THEREFORE,** in consideration of the preceding recitals, which the Parties warrant to be true and correct, and for the consideration set forth herein, the Parties agree as follows:

1.     **Parties Request Court Approval.** Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, the Parties request that the Court approve the Settlement by

**Exhibit "A"**

Page 2

approving this Agreement and its exhibits, and deem the Plaintiffs and the Defendants with full authority to have signed this Agreement, which includes a general release of any and all claims known or unknown from the beginning of time up through and including the date hereof, against the Defendants by the Plaintiffs (individually and derivatively on behalf of Argo), and any future claims and/or litigation arising out of any act or transaction relating to the matters raised in the Action, and in connection therewith issue an order setting forth the Plaintiffs' obligations to, *inter alia*, Argo's shareholders and its counsel, collectively the Court's approval and order shall be defined as the "**Court Approval**."

2.      **Agreement to Settle; Certain Settlement Terms; Escrow Arrangements; Certain Consideration; Etc.**

The Parties agree as follows:

(a)      *Appointment of Escrow Agent*.  Pursuant to an Escrow Agreement dated the date hereof by and among the Plaintiffs and the Escrow Agent (as defined below), a copy of the executed escrow agreement is annexed hereto as **Exhibit A** (the "**Escrow Agreement**"), the Plaintiffs have appointed Plaintiffs' legal counsel, Gusrae Kaplan Nusbaum PLLC, as escrow agent (the "**Escrow Agent**"), to act as escrow agent pursuant to and in accordance with and have the rights as set forth in the Escrow Agreement.  Notwithstanding anything to the contrary provided herein or elsewhere, if any conflict (or perceived conflict) between the terms of this Agreement and the Escrow Agreement arises, the terms of the Escrow Agreement shall govern – only with respect to the parties to the Escrow Agreement - and the Escrow Agent shall be entitled to rely on its interpretation of the Escrow Agreement.  Under no circumstances, however, shall Defendants be considered to have reviewed or approved of the terms of the Escrow Agreement or otherwise be deemed subject to any of the terms or provisions set forth therein.

(b)      *Transfer of Tangible Settlement Consideration to Escrow Agent By Defendants; Escrow Agent's Subsequent Transfer of the Tangible Net Settlement Consideration; Etc.* The Parties have agreed to settle all claims which existed between Plaintiffs and Defendants regarding the matters raised in and/or related to the Action upon the terms and conditions set forth in this Section 2 and the other provisions of this Agreement.  The Plaintiffs (both in their individual and derivative capacity on behalf of Argo), and the other Parties, agree that the cash consideration ("**Cash Consideration**"), and stock consideration (the "**Stock Consideration**," and together with the Cash Consideration, shall sometimes hereinafter be collectively referred to as the "**Tangible Settlement Consideration**") to be paid by the Defendants to settle the Action, as set forth below in this Section 2, shall be transferred by the Defendants to the Escrow Agent no later than fifteen (15) business days from the date of the Court Approval, and the Escrow Agent shall make distributions to Argo pursuant to the Court Approval and the Escrow Agreement.

(c)      Payments To Be Paid By Defendants Constituting The Tangible Settlement Consideration and Related Provisions.

Within fifteen (15) business days following the date of Court Approval:

i. Kates, the Sullivan Defendants and Loppert shall deliver to the Escrow Agent $180,000, and Holdings shall deliver to the Escrow Agent $20,000, in the form of checks or other instruments for the payment of money made payable to the order of "*Gusrae Kaplan Nusbaum PLLC, as Escrow Agent*" or wire transfer to the non interest-bearing escrow account of the Escrow Agent in accordance with the instructions provided by the Escrow Agent at the time payment by Defendants shall be made. The payments made by Defendants under this Section 2(c)(i) shall constitute the **Cash Consideration**.

ii. Kates, the Sullivan Defendants and Loppert shall each deliver to the Escrow Agent stock certificates, duly endorsed for transfer (and/or accompanied by stock transfer powers), for 70,000 shares of Holdings common stock (a total of 210,000 Shares of Holdings common stock). Such 210,000 shares of Holdings common stock shall be "restricted securities" as defined by Rule 144 under Securities Act of 1933, as amended (the "**1933 Act**") and shall contain the appropriate restrictive legends under the 1933 Act.

iii. Holdings shall deliver to the Escrow Agent a stock certificate in the name of Argo for 190,000 shares of Holdings common stock. Such 190,000 shares of Holdings common stock shall be "restricted securities" as defined pursuant to Rule 144 under the 1933 Act and shall contain the appropriate restrictive legend on transfer under the 1933 Act.

iv. Kates, the Sullivan Defendants and Loppert (collectively, the "**Shareholders of the To Be Cancelled Argo Shares**"), shall deliver to the Escrow Agent stock certificates representing all of their respective stockholdings in Argo (collectively, the "**To Be Cancelled Argo Shares**"), with stock certificates duly endorsed for transfer (and/or accompanied by stock transfer powers), transferring such shares to Argo for cancelation pursuant to the terms of the Agreement and the Court Approval.  Following the delivery of such To Be Cancelled Argo Shares to the Escrow Agent, the Shareholders of the To Be Cancelled Argo Shares shall own no Argo shares of common stock and/or other Argo securities, have no rights as holders of Argo securities and Argo shall be entitled to take any and all action on its books and records to reflect the cancellation of the To Be Cancelled Argo Shares.  The To Be Cancelled Argo Shares, the 210,000 shares of Holdings common stock set forth in Section 2(c)(ii) hereof, the 190,000 shares of Holdings common stock set forth in Section 2(c)(iii) hereof, and all stock powers and related documents related to any of such securities shall constitute the "**Stock Consideration.**"

Page 4

v.   After receipt of the Tangible Settlement Consideration, the Escrow Agent shall, in accordance with and pursuant to the Escrow Agreement and the Court Order, distribute to Argo the Tangible Settlement Consideration, less certain deductions set forth in the Escrow Agreement and Court Order. [1]

vi.   After and pursuant to the Court Approval, and taking into account, among other factors, the applicable requirements of State securities and Federal securities laws, rules and regulations and the ability to obtain stock certificates in the names set forth in the Argo Shareholder List, as defined below, certain distributions from the Tangible Settlement Consideration shall be made to the Argo Shareholders.

vii.   Defendants are not parties to the Escrow Agreement, and elect to neither approve nor disapprove of the manner in which the Tangible Settlement Consideration will be distributed, and will not participate in the distribution of the Tangible Settlement Consideration following the delivery of same to the Escrow Agent. Accordingly, not withstanding Defendants' obligations pursuant to Sections 2(g) and 2(i) of this Agreement, Defendants shall not be liable for any claims associated with or resulting from the manner in which the Tangible Settlement Consideration is distributed or otherwise dealt with following the delivery of same to the Escrow Agent.

(d)   *If Court Approval Is Not Obtained.*  In the event Court Approval is not obtained, the Parties shall thereafter continue to negotiate a settlement to the Action in good faith using their best efforts for ninety (90) days until Court Approval is obtained (the "**Negotiation Period**").  If no Court Approval is obtained within the Negotiation Period, any Party may terminate this Agreement upon giving Notice to all other Parties pursuant to Section 6 below.

(e)   *Argo Appointments and Resignations.*  Kates, as of the date hereof, is and at all times hereafter, until the Effective Date of the Argo Board Resolutions (as defined below), shall remain the sole officer and director of Argo.  Attached hereto as **Exhibit B** is a copy of the executed and dated Unanimous Written Consent of the Sole Member of Board of Directors of Argo (the "**Argo Written Consent**"), which, among other things, accepts the resignation of Kates as the sole officer, director and any and all other titles and/or positions that Kates holds with Argo; appoints Mr. Arese as the sole officer and director of Argo, which resolutions (except for resolutions that expressly provide that such resolutions become effective as of a different date including, but not limited to, the resolutions authorizing and approving the Settlement and this Agreement and the execution of this Agreement by Kates, which resolutions become effective upon the date so indicated in the Argo Written Consent), expressly provide therein that such

---

[1] Defendants are not parties to the Escrow Agreement and, therefore, have neither reviewed nor approved of the terms therein

resolutions become effective on the date of Court Approval (the "**Effective Date of the Argo Board Resolutions**")

    (f)   *Required Notices, Etc. To Argo Shareholders*. (i) Plaintiffs to the extent that and in the event that the court requires prior to the Court Approval, and (ii) Argo (A) to the extent any of the following is required pursuant to the Court Approval, and (B) after Mr. Arese is appointed as sole officer and Director of Argo, Mr. Arese shall be responsible for (1) providing any and all notices to the shareholders of Argo (who are set forth in the Shareholders List), relating to this Agreement and/or the Settlement, including, but not limited to, seeking Argo shareholder vote, approval and/.or consent to this Agreement and/or the Settlement, if so required, and (2) distributing the portion of the Tangible Settlement Consideration identified in the Court Approval to the Argo shareholders on the Argo Shareholder List, as required and in accordance with this Agreement and/or the Court Approval and Court Order.

    (g)   *Certain Assistance By Kates*. In the event that Plaintiffs or Mr. Arese request information from Kates (individually or in his corporate capacity prior to Court Approval) in, among other items, providing notices and/or other documents to the Argo shareholders on the Argo Shareholder List relating to this Agreement and/or the Settlement (whether before and/or after Court Approval), Kates shall use his good faith efforts in a timely manner to assist and provide the information to the extent Kates has any information to Plaintiffs or Mr. Arese to effectuate the purposes and intents of this Agreement. However, other than providing the assistance required in this <u>Section 3</u>, nothing herein shall require Kates to facilitate and/or have any financial responsibility for sending out any such notices/documents; nor shall Kates incur any liability (financial or otherwise) based on any assistance he provides absent a finding by a court of competent jurisdiction willful misconduct and/or fraud by Kates.

    (h)   *Actions by Mr. Arese*. Notwithstanding anything to the contrary provided herein or elsewhere, Mr. Arese shall only be acting as an officer of Argo pursuant hereto, and Mr. Arese shall have no liability to any Party or otherwise for his actions pursuant to this <u>Section 3</u> and/or elsewhere, unless and until it is determined by a court of competent jurisdiction (after the time for all appeals has past), that in performing such duties, Mr. Arese acted fraudulently. The Parties hereto understand and agree that Mr. Arese in facilitating the distribution of a certain portion of the Tangible Settlement Consideration in accordance with the Court Approval to the Argo shareholders shall be entitled to rely exclusively on any and all information set forth in the Argo Shareholder List without any further investigation.

    (i)   *Actions by Holdings*. Holdings shall in a timely manner take whatever reasonable actions are necessary in order to effectuate the issuance and transfer of the common shares of Holdings pursuant to <u>Sections 2 and 3</u> of this Agreement.

    3.   **Voluntary Dismissal with Prejudice.** On the date no later than five (5) business days from the date of the receipt by the Escrow Agent of all of the Tangible Settlement Consideration (as provided and in accordance with <u>Section 2</u> of this Agreement), the Parties shall file a Stipulation of Settlement And Voluntary Dismissal

With Prejudice with the Court, seeking to dismiss with prejudice the Action and all issues being resolved relating to the Action. The fully executed Stipulation of Settlement And Voluntary Dismissal With Prejudice is annexed hereto as **Exhibit C**. The Parties agree that the Court shall retain jurisdiction related to Defendants' obligations to make payments and transfers of the Tangible Settlement Consideration set forth in <u>Section 2</u> of this Agreement, and to the extent required by this <u>Section 3</u>, perform its other obligations hereunder and/or those obligations set forth in the Court Approval.

4.    **Representations and Warrants.**

a.    By entering into this Agreement, no Party hereto admits or acknowledges that they committed any wrongdoing on their part, or where a court of competent jurisdiction has held or might have held that a wrongdoing was committed, that such wrongdoing damaged any other Party in any manner.  The Parties acknowledge and agree that the Tangible Settlement Consideration paid by the Defendants in the Settlement as provided in this Agreement is being paid solely to avoid the costs of any further litigation.

b.    Defendant Kates represents and warrants to the Plaintiffs that, as of the date a fully executed and dated copy of this Agreement is received by the Plaintiffs' legal counsel (the "**Effective Date**"), the Argo shareholder mailing list, attached hereto as **Exhibit D**, sets forth to the best of his knowledge and belief (and based on information known to him and/or in his possession) each and every shareholder of Argo and the name, address and number of shares of Argo common stock and/or other securities of Argo owned by each Argo shareholder as of the Effective Date (the "**Argo Shareholder List**").  Kates and Plaintiffs agree that such Parties will use their respective best efforts to file with the Court (as **Exhibit D** hereto), a sealed copy of such Argo Shareholder List to keep confidential the names and addresses of the Argo shareholders, or in the event that for any reason a sealed copy of the Argo Shareholder List cannot be filed with the Court (as **Exhibit D** hereto), such Parties agree to file (as **Exhibit D** hereto), the Argo Shareholder List with the names and addresses of each Argo shareholder redacted.  As to the Argo Shareholder List, Kates (I) further represents and warrants to the Parties that Kates has no knowledge or reason to believe that any information set forth on the Argo Shareholders List is incorrect, or that the Argo Shareholder List omits any information except that the To Be Canceled Shares will be cancelled as provided in accordance with <u>Section 2</u> hereof, and (II) agrees to immediately notify the Plaintiffs (and their Legal counsel(s)) and Argo by written Notice (as defined below) of any changes and/or reason to believe of the occurrence of any changes to the Argo Shareholder List.

c.    All Defendants specifically deny any and all liability for the allegations set forth in the Verified Derivative Complaint filed by the Plaintiffs, and further

deny that there was any evidence that any of the Defendants: illegally sold stock in violation of the Federal Securities law; obtained any "free trading" stock of rVue Holdings, Inc.; artificially or illegally manipulated the price of rVue Holdings; illegally sold their rVue Holdings, Inc. stock into the public markets in any type of "pump and dump" scheme; violated any registration or disclosure requirements under a Federal law or Securities law; or sold/transferred rVue, Inc. to rVue Holdings, Inc. for anything less than fair value. Defendants further deny that there was any evidence to support Plaintiffs' claims that they breached any fiduciary duties, self dealt, wasted corporate assets, engaged in any fraudulent conveyance or unjustly enriched themselves.

d.  Plaintiffs, however, expressly state that there was a reasonable basis and evidence for their claims and bringing the Action and they do not agree with any of the Defendants' statements and/or denials set forth in Section 4 (c) above.

e.  The Parties understand that legal counsel for Plaintiffs is also serving as Escrow Agent for purposes of receiving and holding the Tangible Settlement Consideration on behalf of the Plaintiffs until such time that Argo makes the required distributions of the Tangible Settlement Consideration pursuant to the Court Order. The Defendants acknowledge and agree that the Escrow Agent does not owe the Defendants, and/or have any duties or obligations pursuant to this Agreement or otherwise, as a fiduciary, or otherwise to the Defendants.

5.  **General Releases.**

a.  The Plaintiffs, on behalf of themselves, which expressly includes Casville Investments, Ltd., MBC Investments, SA, Watkins International, Ltd., (and the principal Marco Arese), individually and derivatively on behalf of Argo (but with respect to Mr. Arese, Mr. Arese is not a party to this release in any type of derivative capacity on behalf of Argo and/or any other party), and, their respective and/or mutual heirs, agents, employees, representatives, partners, owners related entities, officers, parents, shareholders, directors, subsidiaries, affiliates, family members, attorneys, transferees, predecessors, successors, and assigns do hereby irrevocably release, acquit and forever discharge Defendants and each of their respective heirs, agents, employees, representatives, partners, owners, related entities, officers, parents, shareholders, directors, subsidiaries, divisions, affiliates, investors, family members, attorneys, transferees, predecessors, successors, and assigns, jointly and severally (the **"Defendant Releasees"**) of and from any and all debts, suits, claims, actions, causes of action, controversies, demands, rights, damages, losses, expenses, costs, attorneys' fees, compensation, liabilities, and obligations whatsoever, suspected or unsuspected, known or unknown, foreseen or unforeseen, arising at any time up to and including the date of

Page 8

this Agreement, which Plaintiffs may now have or at any time heretofore may have had, or which at any time hereafter may have or claim to have against the Defendant Releasees, relating to, arising from, and/or concerning the Action and/or the subject matter thereof.

b.   The Defendants on behalf of themselves, which expressly includes Jason M. Kates, Richard J. Sullivan, World Capital Markets, Inc., Solutions, Inc., David A. Loppert, and rVue Holdings, Inc. and their respective and/or mutual heirs, agents, employees, representatives, partners, owners related entities, officers, parents, shareholders, directors, subsidiaries, affiliates, family members, attorneys, transferees, predecessors, successors, and assigns do hereby irrevocably release, acquit and forever discharge Plaintiffs (and their principal Marco Arese, individually as well as in his corporate capacity for any corporate Plaintiff and/or other entity) and each of their respective heirs, agents, employees, representatives, partners, owners, related entities, officers, parents, shareholders, directors, subsidiaries, divisions, affiliates, investors, family members, attorneys, transferees, predecessors, successors, and assigns, jointly and severally (the "**Plaintiff Releasees**") of and from any and all debts, suits, claims, actions, causes of action, controversies, demands, rights, damages, losses, expenses, costs, attorneys' fees, compensation, liabilities, and obligations whatsoever, suspected or unsuspected, known or unknown, foreseen or unforeseen, arising at any time up to and including the date of this Agreement, which Defendants may now have or at any time heretofore may have had, or which at any time hereafter may have or claim to have against the Plaintiff Releasees, relating to, arising from, and/or concerning the Action and/or the subject matter thereof.

6.   **Notice.**   Any notice, request and/or other communication (collectively a "**Notice**"), whether required to be given hereunder or voluntarily given by a Party hereto to one or more other Parties to this Agreement, must be given in writing and either delivered personally or sent by certified or registered mail, postage prepaid, return receipt requested.  All Notices addressed to one or more of the Parties hereto must be sent to any such Party at the addresses set forth below in this Section 6.  A Notice that is sent by mail will be deemed given three (3) business days after it is mailed.  Any Party may designate, by Notice to all of the others, substitute addresses or addressees for Notices; and, thereafter, Notices are to be directed to those substitute addresses or addressees.

**As to Plaintiff: Casville Investments, Ltd.,**
**MBC Investment, SA and Watkins International,**
**Ltd., individually and derivatively on behalf**
**of Nominal Defendant Argo Digital Solutions, Inc.**
c/o Alison B. Cohen, Esq.
Martin Kaplan, Esq.
GUSRAE KAPLAN NUSBAUM PLLC
120 Wall Street, 25th Floor

Page 9

New York, NY 10005

and

c/o Robert E. Johnson, Esq.
Kevin P. Crosby, Esq.
GRAYROBINSON, P.A.
401 E. Jackson Street
Suite 2700 (33602)
Post Office Box 3324
Tampa, FL 33601

**As to Marco Arese:**
c/o Alison B. Cohen, Esq.
Martin Kaplan, Esq.
GUSRAE KAPLAN NUSBAUM PLLC
120 Wall Street, 25th Floor
New York, NY 10005

and

c/o Robert E. Johnson, Esq.
Kevin P. Crosby, Esq.
GRAYROBINSON, P.A.
401 E. Jackson Street
Suite 2700 (33602)
Post Office Box 3324
Tampa, FL 33601


**As to Defendants:  David A. Loppert**
**Richard J. Sullivan, World Capital Markets, Inc.,**
**Solutions, Inc. and Jason M. Kates**
c/o Robert D. Critton, Jr., Esq.
BURMAN, CRITTON, LUTTIER & COLEMAN, LLP
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401


**As to Defendant:  rVue Holdings, Inc.**
c/o Howard D. Dubosar, Esq.
Robert C.Sheres, Esq.
THE DUBOSAR LAW GROUP, P.A.
1800 North Military Trail
Suite 470
Boca Raton, FL 33431

Page 10

**As to the Escrow Agent:**
As provided in the Escrow Agreement

7.    **General Provisions.**

a.    **Governing Law.** This Agreement and all questions of interpretation, construction and enforcement hereof, and all controversies arising hereunder ("**Issues**"), shall be governed by the applicable statutory and common law of the State of Florida. Venue for any legal proceedings shall be in the Southern District of Florida.

b.    **Severability.** In the event any term or provision of this Agreement shall be held illegal, unenforceable or inoperative as a matter of law, the remaining terms and provisions of this Agreement shall not be affected thereby, but each such term and provision shall be valid and shall remain in full force and effect.

c.    **Binding Effect, Entire Agreement, Modification.** This Agreement shall be binding upon, and shall inure to the benefit of, the successors and assigns of the Parties hereto. This Agreement embodies the entire agreement between the Parties hereto and supersedes any and all prior agreements and understandings, written or oral, formal or informal. No modifications or amendments to this Agreement, of any kind whatsoever, shall be made or claimed by any Party, and no notices of extension, change, modification or amendment made or claimed by any Party hereto shall have any force or effect whatsoever unless the same shall be endorsed in writing and fully signed by the Party against whom enforcement is sought. Unless otherwise expressly set forth herein, all rights and obligations imposed by this Agreement commence upon the date of Court Approval.

d.    **Captions.** Captions, Sections and Paragraph headings contained in this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope or intent of this Agreement nor the intent of any provision hereof.

e.    **Attorneys Fees and Costs.** Each of the Defendants acknowledge and agree that they are responsible for their own attorneys fees and costs associated with and incurred by them in connection with the litigation of this Action, including but not limited to, negotiation and preparation of this Agreement, their efforts in obtaining Court Approval, and the costs and fees associated with their performance under this Agreement and pursuant to the Court Approval. Defendants are not responsible for Plaintiffs' attorneys fees and costs incurred by Plaintiffs in connection with the litigation of this Action, including but not limited to the negotiation of and preparation of this Agreement, their efforts in obtaining Court Approval, and the costs and fees associated with Plaintiffs' performance under this Agreement, notwithstanding any payment of such attorneys fees and costs to be paid from the Tangible Settlement Consideration pursuant to Court Approval.

f.    **Litigation.**  In the event of any dispute or litigation between the Parties relating to or arising out of this Agreement, the prevailing party shall be entitled to an award of reasonable attorney's fees and costs at the pretrial, trial and appellate levels or in bankruptcy court, whether such proceedings are brought in the instant action or some other or subsequent action.

g.    **Further Assurances.**  The Parties hereto agree to take all such action as may be reasonably required by any Party to effectuate the terms, intent and provisions of this Agreement and the actions and transactions contemplated herein.

h.    **Authority.**  The undersigned each acknowledge and represent that they have the authority to execute this Agreement, and with respect to Plaintiffs, the Escrow Agreement.  The Parties have had the opportunity to consult with counsel of their choosing, who have reviewed and commented on this Agreement, and with respect to Plaintiffs, the Escrow Agreement.  This Agreement, and with respect to Plaintiffs, the Escrow Agreement, shall be deemed to have been drafted by all Parties to such agreement and shall not be construed in favor of any Party to such agreement solely by a claim by one or more Parties that one or more Parties drafted (or their legal counsel drafted) this Agreement, and with respect to Plaintiffs, the Escrow Agreement.

i.    **Facsimile as Original.**  Facsimile copies, including scanned copies, of this Agreement, signed and initialed in counterparts, shall be considered for all purposes as originals.

j.    **Counterparts.**  This Agreement may be signed in one or more counterparts, and each such counterpart shall constitute an original of this Agreement for all purposes.

**(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**
***SIGNATURES ON FOLLOWING PAGES)***

Page 12

## [SIGNATURE PAGES]

ACCEPTED AND AGREED BY:

GRAYROBINSON, P.A.
401 E. Jackson Street
Suite 2700 (33602)
Post Office Box 3324
Tampa, FL 33601

By: _____          12/12/13
Robert E. Johnson, Esq.                 ‾‾‾‾‾‾‾‾‾
Kevin P. Crosby, Esq.                   Date
rjohnson@gray-robinson.com
pgatlyn@gray-robinson.com
kevin.crosby@gray-robinson.com
*(Attorneys for Marco Arese and Plaintiffs Casville
Investments, Ltd., MBC Investment, SA
and Watkins International, Ltd. individually
and derivatively on behalf of nominal
defendant Argo Digital Solutions, Inc)*


GUSRAE KAPLAN NUSBAUM PLLC
120 Wall Street, 11th Floor
New York, NY 10005

By: _____          12/10/13
Alison B. Cohen, Esq.                   ‾‾‾‾‾‾‾‾‾
Martin Kaplan, Esq.                     Date
acohen@gusraekaplan.com
mkaplan@gusraekaplan.com
*(Attorneys Pro Hac Vice for Marco Arese and Plaintiffs
Casville Investments, Ltd., MBC
Investment, SA, and Watkins International,
Ltd., individually and derivatively on
behalf of nominal defendant Argo Digital
Solutions, Inc.)*

Page 13

BURMAN, CRITTON, LUTTIER & COLEMAN, LLP
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401

By: _____          _11-25-13_____
Robert D. Critton, Jr., Esq.                   Date
rcrit@bclclaw.com
*(Attorneys for Defendants David A. Loppert
Richard J. Sullivan, World Capital Markets, Inc.,
Solutions, Inc. and Jason M. Kates)*

THE DUBOSAR LAW GROUP, P.A.
1800 North Military Trail
Suite 470
Boca Raton, FL 33431

By: _____          _____
Howard D. Dubosar, Esq.                        Date
Robert C. Sheres, Esq.
DuBosarH@dubolaw.com
sheresr@dubolaw.com
doylek@dubolaw.com
Shepleyj@dubolaw.com
*(Attorneys for Defendant rVue Holdings, Inc.)*

CASVILLE, INVESTMENTS, LTD.

By: _____          _____
Name:                                          Date
Title:
Plaintiff, in both individual and derivative
capacity on behalf of nominal Defendant,
ARGO DIGITAL SOLUTIONS, INC.

Page 13

BURMAN, CRITTON, LUTTIER & COLEMAN, LLP
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401

By: _____          _____
Robert D. Critton, Jr., Esq.              Date
rcrit@bclclaw.com
*(Attorneys for Defendants David A. Loppert*
*Richard J. Sullivan, World Capital Markets, Inc.,*
*Solutions, Inc. and Jason M. Kates)*

THE DUBOSAR LAW GROUP, P.A.
1800 North Military Trail
Suite 470
Boca Raton, FL 33431

By: _____          12/10/13
Howard D. Dubosar, Esq.                  Date
Robert C. Sheres, Esq.
DuBosarH@dubolaw.com
sheresr@dubolaw.com
doylek@dubolaw.com
Shepleyj@dubolaw.com
*(Attorneys for Defendant rVue Holdings, Inc.)*

CASVILLE, INVESTMENTS, LTD.

By: _____          _____
Name:                                    Date
Title:
Plaintiff, in both individual and derivative
capacity on behalf of nominal Defendant,
ARGO DIGITAL SOLUTIONS, INC.

Page 13

BURMAN, CRITTON, LUTTIER & COLEMAN, LLP
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401


By: _____          Date _____
Robert D. Critton, Jr., Esq.
rcrit@bclclaw.com
*(Attorneys for Defendants David A. Loppert*
*Richard J. Sullivan, World Capital Markets, Inc.,*
*Solutions, Inc. and Jason M. Kates)*


THE DUBOSAR LAW GROUP, P.A.
1800 North Military Trail
Suite 470
Boca Raton, FL 33431


By: _____          Date _____
Howard D. Dubosar, Esq.
Robert C. Sheres, Esq.
DuBosarH@dubolaw.com
sheresr@dubolaw.com
doylek@dubolaw.com
Shepleyj@dubolaw.com
*(Attorneys for Defendant rVue Holdings, Inc.)*


CASVILLE, INVESTMENTS, LTD.


By: _____          Date 11 / 26 / 2013
Name:
Title:
Plaintiff, in both individual and derivative
capacity on behalf of nominal Defendant,
ARGO DIGITAL SOLUTIONS, INC.

Page 14

MBC INVESTMENT, SA

By: _____     $\underline{11/26/2013}$
Name: John Piposch                        Date
Title: Director
Plaintiff, in both individual and derivative
capacity on behalf of nominal Defendant,
ARGO DIGITAL SOLUTIONS, INC.


WATKINS INTERNATIONAL, LTD.

By: _____     $\underline{11/26/2013}$
                                          Date
Plaintiff, in both individual and derivative
capacity on behalf of nominal Defendant,
ARGO DIGITAL SOLUTIONS, INC.


_____          _____
JASON M. KATES (As an Individual Defendant)   Date


_____          _____
RICHARD J. SULLIVAN (As an Individual Defendant)   Date

Page 14

MBC INVESTMENT, SA

By: _____          Date _____
Name:
Title:
Plaintiff, in both individual and derivative
capacity on behalf of nominal Defendant,
ARGO DIGITAL SOLUTIONS, INC.

WATKINS INTERNATIONAL, LTD.

By: _____          Date _____

Plaintiff, in both individual and derivative
capacity on behalf of nominal Defendant,
ARGO DIGITAL SOLUTIONS, INC.

_____          11-03-13
JASON M. KATES (As an Individual Defendant)     Date

_____          _____
RICHARD J. SULLIVAN (As an Individual Defendant)     Date

Page 14

MBC INVESTMENT, SA

By: _____
Name:                                          _____
Title:                                          Date
Plaintiff, in both individual and derivative
capacity on behalf of nominal Defendant,
ARGO DIGITAL SOLUTIONS, INC.

WATKINS INTERNATIONAL, LTD.

By: _____
                                               _____
Plaintiff, in both individual and derivative    Date
capacity on behalf of nominal Defendant,
ARGO DIGITAL SOLUTIONS, INC.

_____
JASON M. KATES (As an Individual Defendant)     _____
                                               Date

_____
RICHARD J. SULLIVAN (As an Individual Defendant)   11/20/13
                                               _____
                                               Date

Page 15

WORLD CAPITAL MARKETS, INC. (Defendant)

By: _____     11 | 22 | 13
RICHARD J. SULLIVAN                          Date
Executive Officer


SOLUTIONS, INC. (Defendant)

By: _____     11 | 22 | 13
RICHARD J. SULLIVAN                          Date
100% owner, sole officer and director


_____          _____
DAVID A. LOPPERT (As an Individual Defendant)   Date


RVUE HOLDINGS, INC.

By: _____
MARK PACCHINI                              _____
President                                   Date


_____          _____
MARCO ARESE                                 Date
(Solely for the express and limited purpose of
Being a party to the release set forth in Section 5 hereof)

Page 15

WORLD CAPITAL MARKETS, INC. (Defendant)

By: _____          _____
RICHARD J. SULLIVAN                          Date
Executive Officer


SOLUTIONS, INC. (Defendant)

By: _____          _____
RICHARD J. SULLIVAN                          Date
100% owner, sole officer and director

_____              11/21/13
DAVID A. LOPPERT (As an Individual Defendant)   Date


RVUE HOLDINGS, INC.

By: _____          _____
MARK PACCHINI                                Date
President


_____              _____
MARCO ARESE                                  Date
(Solely for the express and limited purpose of
Being a party to the release set forth in Section 5 hereof)

Page 15

WORLD CAPITAL MARKETS, INC. (Defendant)

By: _____          _____
RICHARD J. SULLIVAN                            Date
Executive Officer


SOLUTIONS, INC. (Defendant)

By: _____          _____
RICHARD J. SULLIVAN                            Date
100% owner, sole officer and director


_____              _____
DAVID A. LOPPERT (As an Individual Defendant)  Date


RVUE HOLDINGS, INC.

By: _____          __12/9/13_____
MARK PACCHINI                                  Date
President


_____              _____
MARCO ARESE                                    Date
(Solely for the express and limited purpose of
Being a party to the release set forth in Section 5 hereof)

Page 15

WORLD CAPITAL MARKETS, INC. (Defendant)

By: _____          Date _____
RICHARD J. SULLIVAN
Executive Officer


SOLUTIONS, INC. (Defendant)

By: _____          Date _____
RICHARD J. SULLIVAN
100% owner, sole officer and director


_____                Date _____
DAVID A. LOPPERT (As an Individual Defendant)


RVUE HOLDINGS, INC.

By: _____          Date _____
MARK PACCHINI
President


_____                Date 11/26/2013
MARCO ARESE
(Solely for the express and limited purpose of
Being a party to the release set forth in Section 5 hereof)

## EXHIBIT A

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** (this "**Agreement**"), is made as of the ____ day of _____ 2013, by and among CASVILLE INVESTMENTS, LTD. ("**Casville**"), MBC INVESTMENTS, SA ("**MBC**") and WATKINS INTERNATIONAL, LTD. ("**Watkins**"), individually and derivatively on behalf of Nominal Defendant ARGO DIGITAL SOLUTIONS, INC. ("**Argo**") (collectively, "**Escrow Parties**"), and GUSRAE KAPLAN NUSBAUM PLLC (the "**Escrow Agent**").

## W I T N E S S E T H :

**WHEREAS**, the Escrow Parties are parties to a certain Settlement Agreement and General Release, dated _____, 2013 (the "**Settlement Agreement**") related to the case captioned, *Casville Investments, Ltd., MBC Investment, SA and Watkins International, Ltd., individually and Derivatively on behalf of Nominal Defendant Argo Digital Solutions, Inc. v. Jason M. Kates, Richard J. Sullivan, David A. Loppert, World Capital Markets, Inc., Solutions, Inc., rVue Holdings, Inc. and John Does 1-20, Defendants, and Argo Digital Solutions, Inc., Nominal Defendant*, and pending in the United States District Court, Southern District of Florida (the "**Court**"), Case No. 13-CV-61596-Dimitrouleas/Snow (the "**Action**"); and pursuant to the terms of the Settlement Agreement, the defendants to the Action (the "**Defendants**") shall deposit in escrow with the Escrow Agent: (i) 400,000 shares of rVue Holdings, Inc. ("**Holdings**") common stock (the "**Shares**"); (ii) $200,000 in cash, and (iii) all of the shares of Argo common stock held by Jason Kates ("**Kates**"), David Loppert ("**Loppert**"), Richard Sullivan ("**Sullivan**"), World Capital Markets Inc. ("**World**"), and Solutions, Inc. ("**Solutions**," and together with Sullivan and World shall collectively be referred to as the "**Sullivan Parties**") which shall be cancelled pursuant to the terms of the Settlement Agreement (collectively, the "**To Be Cancelled Argo Shares**"); and

**WHEREAS**, all capitalized terms not otherwise defined herein, shall have the meanings ascribed to those terms in the Settlement Agreement; and

**WHEREAS**, the Escrow Agent has agreed to act as Escrow Agent pursuant to the terms and conditions of this Agreement;

**NOW, THEREFORE**, in consideration of the promises and for other good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

1.      Delivery of the Settlement

Within fifteen (15) days of the Court's approval of the Settlement Agreement and any order it issues in connection therewith (collectively, the "**Court Approval**"), and pursuant to the terms of the Settlement Agreement and the Court Approval:

(a)      Kates, Sullivan and Loppert shall deliver to the Escrow Agent $180,000, and Holdings shall deliver to the Escrow Agent $20,000, in the form of checks or other instruments for the payment of money made payable to the order of "*Gusrae Kaplan Nusbaum PLLC, as Escrow Agent*" or wire transfer to the non interest-bearing account of the Escrow Agent (the "**Escrow Cash Account**") in accordance with the instructions provided in **Schedule 1**.

(b)     The $200,000 of funds to be deposited into the Escrow Account as set forth in Section 1. (a) above are referred to as the "**Escrow Funds**."

(c)     Kates, the Sullivan Parties and Loppert shall each deliver to the Escrow Agent stock certificates, duly endorsed for transfer for 70,000 shares of Holdings (a total of 210,000 Shares), and Holdings shall deliver to the Escrow Agent stock certificates, duly endorsed for transfer an additional190,000 Shares of Holdings (400,000 Shares of Holdings in the aggregate).

(d)     The 400,000 Shares of Holdings transferred to the Escrow Agent pursuant to Section 1. (c) above are referred to as the "**Escrow Stock**."

(e)     Kates, the Sullivan Parties and Loppert (collectively, the "**Shareholders of the To Be Cancelled Argo Shares**"), shall deliver to the Escrow Agent stock certificates representing the To Be Cancelled Argo Shares, which shall represent all of their respective stockholdings in Argo, with stock certificates duly endorsed for transfer (and/or accompanied by stock transfer powers), transferring To Be Cancelled Argo Shares to Argo for cancelation pursuant to the terms of the Settlement Agreement and/or the Court Approval.

(f)     The 400,000 Shares and the To Be Cancelled Argo Shares shall collectively be referred to as the "**Escrow Stock**."

(g)     The Escrow Agent shall have no duty or responsibility to enforce the collection or demand payment of any Escrow Funds and/or the Escrow Stock (as the case may be), required by the Settlement Agreement to be deposited into the Escrow Account, or that are deposited into the Escrow Account but do not clear.  If, for any reason, any check deposited into the Escrow Account shall be returned unpaid to the Escrow Agent, the sole duty of the Escrow Agent shall be to return the check to the Defendant and advise Defendant thereof.

(h)     The Escrow Agent shall hold all (i) Escrow Funds in the Escrow Account free from any lien, claim or offset of the Escrow Agent, except as set forth herein, and (ii) Escrow Stock in a place so deemed appropriate by the Escrow Agent free from any lien, claim or offset of the Escrow Agreement.

2.     Release of Escrow Funds and Escrow Stock.  The Escrow Funds and Escrow Stock shall be distributed by the Escrow Agent as follows:

(a)     Within ten (10) business days from the date it receives the Escrow Funds and Escrow Stock, the Escrow Agent shall distribute to Argo the **Approved Escrow Funds** (as defined below in Section 2 (a)(i)), in the form of checks or other instruments for the payment of money made payable to the order of "*Argo Digital Solutions, Inc.*" or wire transfer to the account of Argo in accordance with the instructions provided by Marco Arese to the Escrow Agent in each case with the name, address and taxpayer identification number of Argo.

i)     The "**Approved Escrow Funds**" shall mean the Escrow Funds, less the reasonable attorneys fees and expenses incurred by each of the Escrow Parties, whether previously paid and/or owed by each of the Escrow Parties to their legal counsel, relating to the preparation, bringing of, negotiation and/or

settlement, of the Settlement Agreement, the Action, and the Court Approval, and related matters including, but not limited to, each of the Escrow Parties, Argo's and/or Marco Arese's respective obligations pursuant to this Agreement, Court Approval, including but not limited to, the Escrow Agent fees and bank fees related to the Escrow Funds and Escrow Stock, including but not limited to reasonable legal fees and expenses reasonably believed by Marco Arese that he and/or Argo will incur as a result of providing the required notices to the Argo shareholders and the pro rata distribution of the Escrow Funds and 400,00 Shares of Holding to the shareholders of Argo and the delivery of the To Be Cancelled Argo Shares to Argo for cancellation.

(b)     Within ten (10) business days from the date the Escrow Agent receives the Escrow Funds and Escrow Stock, the Escrow Agent shall distribute to Argo (i) the 400,000 Shares of Holding by transferring the 400,000 Shares of Holding to Argo's securities brokerage account (or if certificates cannot be deposited in a securities brokerage account, to Marco Arese who shall hold such 400,000 Shares of Holding in a safe place for the benefit of the shareholders of Argo) in accordance with the instructions provided by Marco Arese, and (ii) the To Be Cancelled Argo Shares to Argo for cancellation to Mr. Arese, whom shall cancel such shares.

(c)     The Escrow Agent shall not be required to pay and/or distribute any uncollected Escrow Funds or Escrow Stock or any Escrow Funds which are not available for withdrawal.

(d)     If any other date that is a deadline under this Escrow Agreement for giving the Escrow Agent notice or instructions or for the Escrow Agent to take action is not a Banking Day, then such date shall be changed to the Banking Day that is immediately after such date.  A "**Banking Day**" is any day other than a Saturday, Sunday or bank holiday in New York, New York.

3.     <u>Acceptance by Escrow Agent</u>.  The Escrow Agent hereby accepts and agrees to perform its obligations hereunder and each of Argo, the Escrow Parties agree:

(a)     The Escrow Agent may act in reliance upon any signature believed by it, in its sole and absolute discretion, to be genuine, and may assume that any person who has been designated by Argo to give any written instructions, notice or receipt, or make any statements in connection with the provisions hereof has been duly authorized to do so.  The Escrow Agent shall have no duty to make inquiry as to the genuineness, accuracy or validity of any statements or instructions or any signatures on statements or instructions.  The names and true signatures of each individual authorized to act singly on behalf of Argo are stated in **Schedule [  ]**, which is attached hereto and made a part hereof.  Argo may remove or add one or more of its authorized signers listed on **Schedule [  ]** by notifying the Escrow Agent in writing of such change in accordance with this Escrow Agreement, which notice shall include the true signature for any new authorized signatories.

(b)     The Escrow Agent may act relative hereto in reliance upon advice of counsel in reference to any matter connected herewith.  The Escrow Agent shall not be liable for any mistake of fact or error of judgment or law, or for any acts or omissions of any kind.

(c)     Argo and each of the Escrow Parties agree for itself only that the Escrow Agent shall be entitled to rely on any and all instructions, notices and other communications from Argo that are provided in accordance with the terms of this Agreement.

(d)     Argo and each of the Escrow Parties jointly and severably, agree to indemnify and hold the Escrow Agent harmless from and against any and all claims, losses, costs, liabilities, damages, suits, demands, judgments or expenses of any kind whatsoever (including but not limited to reasonable attorney's fees as and when occurred) claimed against or incurred by the Escrow Agent, arising out of, in connection with, and/or related to, directly or indirectly, this Agreement.

(e)     In the event that the Escrow Agent shall for any reason, in its sole and absolute discretion, be uncertain as to its duties or rights hereunder, the Escrow Agent shall be entitled to automatically and without the consent of any party to (i) refrain from taking any action other than to keep safely the Escrow Funds and Escrow Stock until it shall be directed otherwise by a court of competent jurisdiction, and/or (ii) deliver the Escrow Funds and/or Escrow Stock to a court of competent jurisdiction, and in either case it shall notify Argo thereof.

(f)     The Escrow Agent shall have no duty, responsibility or obligation to interpret or enforce the terms of any agreement other than the Escrow Agent's obligations hereunder, and the Escrow Agent shall not be required to make a request that any monies be delivered to the Escrow Account or to the Escrow Agent, it being agreed that the sole duties and responsibilities of the Escrow Agent, to the extent not prohibited by applicable law, shall be (i) to accept checks or other instruments for the payment of money and wire transfers delivered to the Escrow Agent for the Escrow Account and deposit said checks and wire transfers into the non-interest bearing Escrow Account, (ii) to accept the Escrow Stock; and (iii) to disburse or refrain from disbursing the Escrow Funds and Escrow Stock as stated herein, provided that the funds received by the Escrow Agent have been collected and cleared and are available for withdrawal.

(g)     Argo and each of the Escrow Parties acknowledge, confirm and represent and warrant that it/he has received a copy of this Escrow Agreement, has fully read and understands the provisions hereof, and agrees to be bound by its terms.

4.     <u>Resignation and Termination of the Escrow Agent</u>.  The Escrow Agent may resign at any time by giving ten (10) days' prior written notice of such resignation to Argo. Upon providing such notice, the Escrow Agent shall have no further obligation hereunder except to hold the Escrow Funds and Escrow Stock which it then has or thereafter receives until the end of such ten (10) day period.  In such event, the Escrow Agent shall not take any action other than receiving and depositing the Escrow Funds it has an/or receives receives and receiving and holding the Escrow Stock it receives in accordance with this Escrow Agreement, until Argo shall have designated a banking corporation, trust company, attorney or other person as successor. Upon receipt of such written designation signed by Argo, the Escrow Agent shall promptly deliver the Escrow Funds and Escrow Stock to such successor and shall thereafter have no further obligations hereunder.  If such instructions are not received within ten (10) days following the effective date of such resignation, then the Escrow Agent may deposit the Escrow Funds and Escrow Stock and any other amounts and/or items held by it pursuant to this Escrow Agreement with a clerk of a court of competent jurisdiction pending the appointment of a

successor.  In either case provided for in this paragraph, the Escrow Agent shall be relieved of all further obligations and released from all liability thereafter arising with respect to this Agreement, the Settlement Agreement, the Escrow Funds, the Escrow Stock and/or otherwise.

5.      <u>Termination</u>.  Argo may terminate the appointment of the Escrow Agent hereunder upon written notice specifying the date upon which such termination shall take effect, which date shall be at least thirty (30) days from the date of such notice.  In the event of such termination, Argo shall, within thirty (30) days of such notice, appoint a successor escrow agent and the Escrow Agent shall, upon receipt of written instructions signed by Argo, turn over to such successor escrow agent all of the Escrow Funds and Escrow Stock; <u>provided</u>, <u>however</u>, that if Argo fails to appoint a successor escrow agent within such 30-day period, such termination notice shall be null and void and the Escrow Agent shall continue to be bound by all of the provisions hereof.  Upon receipt of the Escrow Funds and Escrow Stock, the successor escrow agent shall become the escrow agent hereunder and shall be bound by all of the provisions hereof and the Escrow Agent shall be relieved of all obligations and released from all liability thereafter arising with respect to this Agreement, the Settlement Agreement, the Escrow Funds, the Escrow Stock and/or otherwise.

6.      <u>Fees and Expenses</u>.  Argo, each of the Escrow Parties shall be jointly and severally obligated to reimburse the Escrow Agent for all third party fees, costs and expenses incurred in good faith or that become due in connection with the Escrow Account and this Escrow Agreement, including reasonable and actual attorney's fees and expenses.  Neither the modification, cancellation, termination or rescission of this Escrow Agreement, nor the resignation or termination of the Escrow Agent, shall: (i) affect the right of the Escrow Agent to be reimbursed or paid for any costs or expenses that have been incurred or become due prior to the effective date of any such modification, cancellation, termination, resignation or rescission; or, (ii) affect the right of the Escrow Agent to, in its sole discretion, pay all third party fees, costs and expenses incurred in good faith or that become due in connection with the Escrow Account and this Escrow Agreement, including reasonable and actual attorney's fees.

7.      <u>Notices</u>.  All notices, requests, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given if sent by hand-delivery, by facsimile (followed by first-class mail), one (1) business day after sent by nationally recognized overnight courier service or three (3) business days after sent by registered or certified mail, return receipt requested, in each case costs prepaid, to the addresses set forth below.

<u>If to Argo:</u>

Argo Digital Solutions, Inc.

Attention:

<u>If to the Escrow Agent:</u>

Gusrae Kaplan Nusbaum PLLC
120 Wall Street, 11th Floor
New York, New York 10005
<u>Attention</u>:  Lawrence G. Nusbaum, Esq.
Fax:  (212) 809-5449

<u>If to the Escrow Parties</u>:
Casville Investments, Ltd.,
MBC Investment, SA and Watkins International,
Ltd., individually and derivatively on behalf
of Nominal Defendant Argo Digital Solutions, Inc.

Gusrae Kaplan Nusbaum PLLC
120 Wall Street, 11th Floor
New York, New York 10005
<u>Attention</u>:  Lawrence G. Nusbaum, Esq.
Fax:  (212) 809-5449

8.    <u>General</u>.

(a)    The Escrow Parties and the Escrow Agent expressly and irrevocably agree that this Escrow Agreement shall be governed by and construed solely and exclusively in accordance with the laws of the State of New York without regard to the conflicts of laws principles thereof. The Escrow Agent and the Escrow Parties hereby expressly and irrevocably agree that any suit or proceeding arising directly and/or indirectly pursuant to or under this Escrow Agreement or the consummation of the transactions contemplated hereby, shall be brought solely in a federal or state court located in the City, County and State of New York. By its execution hereof, the parties hereto hereby each covenant and irrevocably submit to the in personam jurisdiction of the federal and state courts located in the City, County and State of New York and agree that any process in any such action may be served upon any of them personally, or by certified mail or registered mail upon them or their agent, return receipt requested, with the same full force and effect as if personally served upon them in New York City. The parties hereto each waive any claim that any such jurisdiction is not a convenient forum for any such suit or proceeding and any defense or lack of in personam jurisdiction with respect thereto.

(b)    This Escrow Agreement sets forth the entire agreement and understanding of the parties in respect to the matters contained herein and supersedes all prior agreements, arrangements and understandings relating thereto.  Any conflict (or conflict perceived to exist as determined by the Escrow Agent) between any provision of the Escrow Agreement and the Settlement Agreement shall be resolved pursuant and by reference to the terms of this Escrow Agreement as so determined by the Escrow Agent.

(c)    All of the terms and conditions of this Escrow Agreement shall be binding upon, and inure to the benefit of and be enforceable by, the parties hereto, as well as their respective successors and assigns.

(d)      This Escrow Agreement may be amended, modified, superseded or canceled, and any of the terms or conditions hereof may be waived, only by a written instrument executed by each party hereto or, in the case of a waiver, by the party waiving compliance. The failure of any party at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same.  No waiver of any party of any condition, or of the breach of any term contained in this Escrow Agreement, whether by conduct or otherwise, in any one or more instances shall be deemed to be or construed as a further or continuing waiver of any such condition or breach or a waiver of any other condition or of the breach of any other term of this Escrow Agreement.  No party may assign any rights, duties or obligations hereunder unless all other parties have given their prior written consent.

(e)      If any provision included in this Escrow Agreement proves to be invalid or unenforceable, it shall not affect the validity of the remaining provisions.

(f)      This Escrow Agreement and any amendment or modification of this Escrow Agreement may be executed in several counterparts or by separate instruments and all of such counterparts and instruments shall constitute one agreement, binding on all of the parties hereto.

9.      Form of Signature. The parties hereto agree to accept a facsimile transmission copy or .pdf copy of their respective actual signatures as evidence of their actual signatures to this Escrow Agreement and any amendment or modification of this Escrow Agreement; provided, however, that each party who produces a facsimile or .pdf copy signature agrees, by the express terms hereof, to place, promptly after transmission of his or her signature by fax or email, a true and correct original copy of his or her signature in overnight mail to the address of the other parties.

10.      Conflict of Interest.  The Escrow Parties hereto, expressly acknowledge, confirm, agree and understand that the Escrow Agent is acting as legal counsel to Argo and the Escrow Parties in connection with the Action, the Settlement Agreement and all matters related thereto, and the Escrow Parties expressly and irrevocably waive any conflict of interest that may, has, could, and/or in the future arise and/or arises regarding a conflict of interest of the Escrow Agent in its role as Escrow Agent pursuant to this Escrow Agreement and acting as legal counsel for the Escrow Parties.

*[Signature page follows]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement the day and year first above written.

Argo Digital Solutions, Inc.

By:_____
    Name:
    Title:

**ESCROW AGENT**
**GUSRAE KAPLAN NUSBAUM PLLC.**

By:_____
    Name:  Martin H. Kaplan, Esq.
    Title:   Managing Member

**CASVILLE INVESTMENTS, LTD.**

By: _____
    Name:
    Title:

**MBC INVESTMENT, SA**

By: _____
    Name:
    Title:

WATKINS INTERNATIONAL, LTD.

By: _____
Name: Jon Pinvisch
Title: Attorney

**EXHIBIT B**

## UNANIMOUS WRITTEN CONSENT OF SOLE MEMBER OF BOARD OF DIRECTORS OF ARGO DIGITAL SOLUTIONS, INC.

WHEREAS, Jason M. Kates is the sole director on the Board of Directors (the "**Argo Board**"), of Argo Digital Solutions, Inc. ("**Argo**").

WHEREAS, pursuant to the terms and conditions of a settlement agreement by and among CASVILLE INVESTMENTS, LTD., MBC INVESTMENTS, SA, and WATKINS INTERNATIONAL, LTD., individually and Derivatively on behalf of Nominal Defendant ARGO DIGITAL SOLUTIONS, INC., and the named Defendants, JASON M. KATES, RICHARD J. SULLIVAN, WORLD CAPITAL MARKETS, INC. and SOLUTIONS, INC., DAVID A. LOPPERT and RVUE HOLDINGS, INC. dated _____, 2013 (the "**Settlement Agreement**"), effective upon the date the court approves the Settlement Agreement (the "**Effective Date**"), Mr. Kates (i) agrees to resign as officer, director and all other positions with Argo on the Effective Date and accordingly, as of the Effective Date, Mr. Kates hereby without any further action resigns as an officer, director and all other positions with Argo, and (ii) immediately prior to or simultaneously with the Effective Date, appoints Marco Arese as the sole director and Chief Executive Officer of Argo.

BE IT RESOLVED that on the Effective Date Mr. Kates automatically and without further shall (i) be deemed to resign as the sole officer, director and all other positions with the Company, and (ii) Mr. Arese will be deemed the sole Director and Chief Executive Officer of Argo.

BE IT FURTHER RESOLVED, that (i) Mr. Kates (and following the Effective Date, Mr. Arese), shall take any and all such actions as are necessary and each hereby are authorized and/or advisable to effectuate the resolutions and actions set forth herein and in the Settlement Agreement, and (ii) all prior actions taken by Mr. Arese to the resolutions and actions set forth herein.

BE IT FURTHER RESOLVED, that upon receipt of the Argo Shares to Be Cancelled (as defined in the Settlement Agreement), Argo and/or its then officer and director shall cancel such Argo Shares to be cancelled.

IN WITNESS THEREFORE, Argo Digital Solutions, Inc. hereby approves the above resolution.

ARGO DIGITAL SOLUTIONS, INC.

By: _____          Date: _____12.31.13_____
    Jason M. Kates
    Chief Executive Officer and Sole Director

**EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASVILLE INVESTMENTS, LTD,
et al.,

      Plaintiffs,

vs.                         Case No. 13-cv-61596-WPD

JASON M. KATES, et al.,

      Defendants.

_____/

## STIPULATION OF SETTLEMENT AND VOLUNTARY DISMISSAL WITH PREJUDICE

It is hereby stipulated and agreed by and among CASVILLE INVESTMENTS, LTD.,

MBC INVESTMENTS, SA, WATKINS INTERNATIONAL, LTD., individually and

derivatively on behalf of nominal defendant ARGO DIGITAL SOLUTIONS, INC. (collectively,

the "Plaintiffs") and JASON M. KATES, RICHARD J. SULLIVAN, DAVID A. LOPPERT,

WORLD CAPITAL MARKETS, INC., SOLUTIONS, INC., and RVUE HOLDGINS, INC.

(collectively, the "Defendants"), by and through their undersigned counsel the following:

1. The above-captioned action is settled pursuant to the terms of the settlement agreement
   dated _____, 2013 (the "Settlement Agreement") and the Court order approving the
   Settlement Agreement; and,

2. Pursuant to Rule 23.1 and Rule 41 of the Federal Rules of Civil Procedure, the above-
   captioned action is voluntarily dismissed with prejudice; and,

3. This Stipulation may be executed in counterparts and any facsimile or copy signature
   shall have the same force and effect as an original signature.

Dated: January 15, 2013

GRAYROBINSON, P.A.

By: _____

Robert B. Johnson, Esq.

Kevin P. Crosby, Esq.
401 E. Jackson Street
Suite 2700 (33602)
Post Office Box 3324
Tampa, FL 33601
rjohnson@gray-robinson.com
pgatlyn@gray-robinson.com
kevin.crosby@gray-robinson.com
*(Attorneys Plaintiffs Casville
Investments, Ltd., MBC Investment, SA
and Watkins International, Ltd. individually
and derivatively on behalf of nominal
defendant Argo Digital Solutions, Inc)*

GUSRAE KAPLAN NUSBAUM PLLC

By: _____
Alison B. Cohen, Esq.
Martin Kaplan, Esq.
120 Wall Street, 11th Floor
New York, NY 10005
acohen@gusraekaplan.com
mkaplan@gusraekaplan.com
*(Attorneys Pro Hoc Vice for Plaintiffs
Casville Investments, Ltd., MBC
Investment, SA, and Watkins International,
Ltd., individually and derivatively on
behalf of nominal defendant Argo Digital
Solutions, Inc.)*

BURMAN, CRITTON, LUTTIER &
COLEMAN, LLP


By: _____
Robert D. Critton, Jr., Esq.
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401
rcrit@bclclaw.com
*(Attorneys for Defendants David A. Loppert
Richard J. Sullivan, World Capital Markets,
Inc., Solutions, Inc. and Jason M. Kates)*

THE DUBOSAR LAW GROUP, P.A.


By: _____
Howard D. Dubosar, Esq.
Robert C. Sheres, Esq.
1800 North Military Trail
Suite 470
Boca Raton, FL 33431
DuBosarH@dubolaw.com
sheresr@dubolaw.com
doylek@dubolaw.com
Shepleyj@dubolaw.com
*(Attorneys for Defendant rVue Holdings,
Inc.)*

Dated: ___/15/___, 2014

GRAYROBINSON, P.A.

By: _____

Robert E. Johnson, Esq.

Kevin P. Crosby, Esq.
401 E. Jackson Street
Suite 2700 (33602)
Post Office Box 3324
Tampa, FL 33601
rjohnson@gray-robinson.com
pgatlyn@gray-robinson.com
kevin.crosby@gray-robinson.com
(Attorneys Plaintiffs Casville
Investments, Ltd., MBC Investment, SA
and Watkins International, Ltd. individually
and derivatively on behalf of nominal
defendant Argo Digital Solutions, Inc)

GUSRAE KAPLAN NUSBAUM PLLC

By: _____
Alison B. Cohen, Esq.
Martin Kaplan, Esq.
120 Wall Street, 11th Floor
New York, NY 10005
acohen@gusraekaplan.com
mkaplan@gusraekaplan.com
(Attorneys Pro Hac Vice for Plaintiffs
Casville Investments, Ltd., MBC
Investment, SA, and Watkins International,
Ltd., individually and derivatively on
behalf of nominal defendant Argo Digital
Solutions, Inc.)

BURMAN, CRITTON, LUTTIER &
COLEMAN, LLP

By: _____

Robert D. Critton, Jr., Esq.
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401
rcrit@bclclaw.com
(Attorneys for Defendants David A. Loppert
Richard J. Sullivan, World Capital Markets,
Inc., Solutions, Inc. and Jason M. Kates)

THE DUBOSAR LAW GROUP, P.A.

By: _____
Howard D. Dubosar, Esq.
Robert C. Sheres, Esq.
1800 North Military Trail
Suite 470
Boca Raton, FL 33431
DuBosarH@dubolaw.com
sheresr@dubolaw.com
doylek@dubolaw.com
Shepleyj@dubolaw.com
(Attorneys for Defendant rVue Holdings,
Inc.)

Dated: _____, 2013

GRAYROBINSON, P.A.

By: _____

Robert E. Johnson, Esq.

Kevin P. Crosby, Esq.
401 E. Jackson Street
Suite 2700 (33602)
Post Office Box 3324
Tampa, FL 33601
rjohnson@gray-robinson.com
pcatlyn@gray-robinson.com
kevin.crosby@gray-robinson.com
*(Attorneys Plaintiffs Casville
Investments, Ltd., MBC Investment, SA
and Watkins International, Ltd. individually
and derivatively on behalf of nominal
defendant Argo Digital Solutions, Inc)*

GUSRAE KAPLAN NUSBAUM PLLC

By: _____
Alison B. Cohen, Esq.
Martin Kaplan, Esq.
120 Wall Street, 11th Floor
New York, NY 10005
acohen@gusraekaplan.com
mkaplan@gusraekaplan.com
*(Attorneys Pro Hac Vice for Plaintiffs
Casville Investments, Ltd., MBC
Investment, SA, and Watkins International,
Ltd., individually and derivatively on
behalf of nominal defendant Argo Digital
Solutions, Inc.)*

BURMAN, CRITTON, LUTTIER &
COLEMAN, LLP

By: _____
Robert D. Critton, Jr., Esq.
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401
rcrit@bclclaw.com
*(Attorneys for Defendants David A. Loppert
Richard J. Sullivan, World Capital Markets,
Inc., Solutions, Inc. and Jason M. Kates)*

THE DUBOSAR LAW GROUP, P.A.

By: _____
Howard D. Dubosar, Esq.
Robert C. Sheres, Esq.
1800 North Military Trail
Suite 470
Boca Raton, FL 33431
DuBosarH@dubolaw.com
sheresr@dubolaw.com
doylck@dubolaw.com
Shepleyj@dubolaw.com
*(Attorneys for Defendant rVue Holdings,
Inc.)*

Dated: _____, 2013

GRAYROBINSON, P.A.

By: _____

Robert E. Johnson, Esq.

Kevin P. Crosby, Esq.
401 E. Jackson Street
Suite 2700 (33602)
Post Office Box 3324
Tampa, FL 33601
rjohnson@gray-robinson.com
pgatlyn@gray-robinson.com
kevin.crosby@gray-robinson.com
*(Attorneys Plaintiffs Casville
Investments, Ltd., MBC Investment, SA
and Watkins International, Ltd. individually
and derivatively on behalf of nominal
defendant Argo Digital Solutions, Inc)*

GUSRAE KAPLAN NUSBAUM PLLC

By: _____

Alison B. Cohen, Esq.
Martin Kaplan, Esq.
120 Wall Street, 11th Floor
New York, NY 10005
acohen@gusraekaplan.com
mkaplan@gusraekaplan.com
*(Attorneys Pro Hoc Vice for Plaintiffs
Casville Investments, Ltd., MBC
Investment, SA, and Watkins International,
Ltd., individually and derivatively on
behalf of nominal defendant Argo Digital
Solutions, Inc.)*

BURMAN, CRITTON, LUTTIER &
COLEMAN, LLP

By: _____   1-15-14

Robert D. Critton, Jr., Esq.
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401
rcrit@bclclaw.com
*(Attorneys for Defendants David A. Loppert
Richard J. Sullivan, World Capital Markets,
Inc., Solutions, Inc. and Jason M. Kates)*

THE DUBOSAR LAW GROUP, P.A.

By: _____

Howard D. Dubosar, Esq.
Robert C. Sheres, Esq.
1800 North Military Trail
Suite 470
Boca Raton, FL 33431
DuBosarH@dubolaw.com
sheresr@dubolaw.com
doylek@dubolaw.com
Shepleyj@dubolaw.com
*(Attorneys for Defendant rVue Holdings,
Inc.)*

## EXHIBIT D

**FILED UNDER SEAL**